(54 Misc. Rep. 98)

### GIENTY v. KNIGHTS OF COLUMBUS.

(Supreme Court, Special Term, Orange County. June 27, 1907.)

**1. INSURANCE—FRATERNAL SOCIETIES—REGULATIONS—CHANGE.**

Decedent applied for insurance in a fraternal society, agreeing to conform to the society's constitution, by-laws, and regulations then in force, or which at any time thereafter might be adopted, and to submit to the penalties then or thereafter provided for violation thereof. He also agreed that, if he engaged in any occupation which should be deemed extrahazardous, he should forfeit his insurance, together with all payments made thereon. *Held,* that a subsequent regulation classing the business of railroad switchman as extrahazardous was binding on decedent, and that his engaging in such business operated to forfeit his certificate, though the occupation was not so designated when the application was made.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 1855.]

**2. SAME—FORFEITURE—WAIVER—PAYMENT OF DUES.**

Acceptance of dues from a member by a fraternal society, without knowledge that he had forfeited his insurance by engaging in an extrahazardous occupation, did not constitute a waiver of the forfeiture.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 1909.]

Action by Michael Gienty against the Knights of Columbus. Complaint dismissed on the merits.

Thomas Watts, for plaintiff.

William P. Gregg, for defendant.

TOMPKINS, J. This is an action by the plaintiff as the heir at law of Peter E. Gienty on an endowment voucher or certificate of insurance, dated October 1, 1900, issued to Peter E. Gienty by the defendant, for the sum of $1,000. The assured made application in writing July 23, 1900, for insurance membership in the defendant order, and was initiated as a member on the 25th day of September, 1900. His occupation at the time he became a member, and when he made application for membership, was that of a clerk. On the 24th day of November, 1902, he changed his occupation to that of a switchman in the yard of the Erie Railroad Company, at Port Jervis, N. Y., and was killed while engaged in that occupation on the 24th day of October, 1903. The endowment voucher was issued to the assured on the 1st day of October, 1900.

The defense is that the assured was not in good standing at the time of his death, and had ipso facto forfeited his membership by engaging in the occupation of a switchman, which has been declared by the defendant's board of directors to be an extrahazardous occupation, on or about the 26th day of June, 1900, and before Gienty became a member, and before he made application for membership.

In his application, the assured agreed as follows:

"If I engage in any occupation which shall be deemed extrahazardous or prima facie hazardous, by the board of directors or their successors, I shall thereby forfeit my membership in the order, together with all payments made by me."

On the trial it was conceded by the plaintiff that the occupation of switchman is an extrahazardous one, and also that the board of directors of the defendant company had so declared, although the plaintiff claims that such action was not taken until after the assured became a member, and that the occupation of switchman was not stated in the application blank as an extrahazardous one, while other occupations were specifically stated.

In the view that I take of the law applicable to this case, it is not material whether the employment of the assured as a switchman was included in the extrahazardous class before or after his application was made for membership, or before or after he became a member. The contract between the assured and the defendant rested upon the application, the certificate of insurance, the charter, constitution, rules, regulations, and by-laws of the defendant, and in his application the assured agreed as follows:

"That I will conform to and abide by the constitution, by-laws, rules and regulations, of the said order, and of any council thereof, of which I may at any time be a member, which may now be in force, or which at any time hereafter be adopted by the proper authorities, or submit to the penalties now or hereafter provided, for the breach or violation of such constitution, by-laws, rules or regulations."

The defendant thereby reserved to itself the power to amend its by-laws and adopt new ones for the preservation of its funds, and the protection of its insurance membership; and to that the assured agreed, and, in addition to that general reservation, the assured expressly agreed in his written application for insurance to forfeit his membership if he should engage in any occupation "which shall be deemed extrahazardous or prima facie hazardous by the board of directors or their successors." In my opinion, that agreement on the part of the assured, together with the general reservation contained in the defendant's by-laws, gave the company power to determine what risks should be deemed extrahazardous, and it appears that prior to November 24, 1902, when the assured entered upon his employment as a switchman, the board of directors had regularly adopted and promulgated a list of extrahazardous occupations, including the occupation of switchman, and that that occupation continued to be an extrahazardous one, under the by-laws and regulations of the defendant, down to the time of the death of Gienty.

Plaintiff cites the decision of the Court of Appeals in the case of Ayres, Respt., v. Grand Lodge of the Ancient Order of United Work-

men, 188 N. Y. 280, 80 N. E. 1020, in support of his contention that the defendant had no right, by an amendment to its by-laws, to impair the vested rights of the assured, and the court in that case does hold that, when a power to amend by-laws is reserved in general terms, the parties do not mean that the contract is subject to change in any essential part at the election of the one in whose favor the reservation is made. But in that case the reservation to amend the by-laws was general in character, and did not specify any particular respect in which the by-laws might be amended, and the court held that, under those circumstances, the society had no power to so amend its by-laws as to prohibit any certificate holder from selling liquors at retail, and declaring the certificate of any one engaging in such business void. But the court in that case says:

"The fact that, in the application upon which the certificate was issued, the assured agreed to comply with all laws, regulations, and requirements of the society which were then or might thereafter be engaged, there being no reservation in the by-laws of the specific right to amend them so as to restrict the occupation or business of the assured, and the attempt made without his consent, was beyond the power of the society, and void"

—clearly intimating that if the society had reserved the right to restrict its members to certain nonhazardous employments, and to forfeit the insurance of any member engaging in such an occupation, that it would have had the power so to do.

My conclusion is that the defendant had a right to include in its list of extrahazardous occupations that of switchman, and that the assured by engaging in that occupation ipso facto forfeited his insurance membership in the defendant company.

The plaintiff claims that, if there was a forfeiture by the assured of his membership by reason of his extrahazardous employment, the company waived the forfeiture by accepting several months' dues, and giving the assured receipts therefor. That might be so if the defendant or its officers had notice of Gienty's occupation or change of occupation, and, after such notice, received, accepted, and receipted for his dues; but there is no evidence in the case that the defendant or its officers had any such knowledge or notice, and, in the absence of knowledge, the defendant cannot be said to have waived the forfeiture.

The defendant is entitled to judgment dismissing the complaint upon the merits, and for the costs of the action.